And we have Mr. Martin for PNC. Thank you, Your Honors. Good morning. May it please the Court, James Martin for PNC. And with the Court's permission, I'd like to reserve three minutes for reversal. Very well. To obtain a reversal in this appeal, PNC does not need to prove or establish that it has the only reasonable construction of the fee exception or the policy coverage provisions in this case. It only has to show that it has a reasonable construction. And while there have been divergent views about the policy language here, as manifested by the briefing and more specifically, Magistrate Judge Kelly's opinion, PNC most certainly has a reasonable construction of the policy here that provides for coverage, one that is consistent with the grammatical language of the fee exception and the principles of policy construction that control and favor the provision of coverage in these circumstances. Now, exactly the same analysis applies to the second related issue in this appeal, which is that of the record on the class action settlements and whether or not those settlements have to be construed to establish that the lump sum settlements were paid as a disgorgement of unlawfully obtained fees. And on this record, that is very much a factual dispute, one that should not have been resolved against PNC in a summary motion like this one. And at the very least, a remand is needed on that issue. How are class members' recovery calculated? The class member payments were by a formula that did indeed, Your Honor, refer to the overdraft fees. There's no question about that. So if I'm a class member, I'm looking at this, I'm getting some of my fees back. If you're a class member, you're looking at a damage recovery, and that's exactly what it was. It was harm that was paid to the class members. Those payments were made per the formula. And what the court should not do, and what the district court unfortunately did, is confuse the method of payment with the reason that the settlements were undertaken. Was the settlement calculated at about 46% of the total overcharges? It was as a figure for estimating the gross recovery that would have been available after a trial of the class actions. And that's what the evaluation was. You will look at the settlements. I want to be clear on this, though. The 46% was 46% of the overdraft charges at issue. It was 46% was a formulaic calculation divined by the expert of an alternative method of calculating how the overdrafts should have been paid. It was not an effort to say this is the number of fees received by anybody, paid by anybody, or that PNC in fact was disgorging fees in paying $90 million on the one hand or $12 million on the other. And that's the important point on the record about the settlements. Okay, counsel, let me back you up for a minute. Did I understand you to say it was a factual dispute and this case should be remanded? If it comes down to... You just told us that, didn't you? Excuse me? Did you just say it was a factual dispute? Your Honor, there is a factual dispute here at a minimum on the characterization of the settlement payments as the disgorgement of attorney's fees, yes. And if the court does not adopt the construction that PNC is advancing, that those payments were not the return of fees, then there is a factual dispute that requires remand over the construction of the settlements. On the coverage side, Your Honor, if the court favors our reasonable construction of the policy, no remand of any kind is required. As a matter of law, both the attorney's fees and the settlement payments should be covered. And if the court agrees with us on that, which we believe that it should, there is no need to get into this issue over the construction of the settlement agreements at all. So I want to be clear that there is only a need for a remand if the court goes against us on the coverage issue, number one. Number two, if the court were to construe the settlements as possibly involving the disgorgement of fees, then a remand would be required. But didn't the parties agree to submit this on the papers in front of the district court? Your Honor, that certainly is an argument that's been injected. But what we agreed to, Your Honor, was to submit the construction of the policy language on the papers. The whole issue about the nature of the fees was injected into the case after we filed our motion based on the construction, and that became an issue. Well, that doesn't make a lot of sense to me. I mean, it doesn't make a lot of sense to me that you would say the construction was an issue when the whole question is, were these payments that were made covered by the policy? So the nature of the payments is always an issue. Your Honor, if it comes down to that, I will stick by what I said. That that is on this record, notwithstanding our agreement that the construction issue should be submitted as a matter of law, the way that the district court decided this case, that is a factual dispute on this record based on what was in front of the court. She couldn't find against us on that issue. The record didn't compel it. As I said, Your Honor, you will look at the settlement agreements. But you were happy with the magistrate judge's reasoning. There was no factual dispute there. You're unhappy now that the district court has disagreed with the magistrate judge, and now there's a factual dispute. So two things on that. The magistrate judge stopped with the policy construction issue that we had put in front of it and said, under no circumstances does the fee exception cover the damages paid in this case. Because the damages in the fee exception have to be paid or payable to the insured. That didn't happen here under the terms of the settlement. So we're done. I see. I'd like to turn to a slightly different topic. Is the fact that this payment of fees coming out of a common fund make this different? The fund, under a understanding of the facts, could be viewed as one that was created to reimburse for these overdraft fees. A big fund was created. That's what the settlement agreement says in both of the cases. A portion of that collection of money was going to be given to plaintiff's attorneys. Why does the fact that they're the ultimate recipient of those common monies change the character of what the fund is? Okay. I want to start by disputing the first premise, that the fund, in fact, is the return of fees. Potentially, that's the... Okay. We understand you're not conceding that. And second, moving beyond that, the coverage portion of the policy here involved a separate payment for attorney's fees. That was a coverage provision, not an exclusion. And when PNC paid the fees, you can see from the settlement documents and the approvals, they were always separately earmarked as a payment for attorney's fees that falls expressly within that coverage provision. Wasn't the agreement, though, that says we will not oppose a fee award by the court up to a certain amount through a clear-sailing type provision? Yes, but that actually gets to the second leg of the analysis. When you look at the court's approval of the fees, it was based on a factorial analysis based on the work done by counsel. And the issue of the fees was carved out separately for payment. That was always contemplated from the beginning. So there are two problems with their common fund analysis, maybe three. The first is, as the district court concluded, it has no factual support in the record. The attorney's fees were earmarked separately, they were paid separately, and the reasons that they were paid had nothing to do with the customers, if you will, or the payments that the customers received. Second, the PAC's payment under each settlement was never going to exceed the agreed-upon amounts of $90 million and $12 million. That's correct, but the agreed-upon amounts were to settle the risk of the litigation and to pay the attorney's fees. That was specified in the agreements. Agreements don't say anywhere that they represent the disgorgement or restitution of fees anywhere. The approval order doesn't say that. And the settlement motions don't say that either. That only comes from this formulated calculation of the payments. But back to this question about the common fund, Your Honor, the second leg of it is that because there is an indemnity provision for attorney's fees in this policy that's not qualified, reading the settlement payment issue as an overlay to exclude coverage for that redrafts the policy. It's not proper as a matter of construction, and the UnitedHealth Insurance case that we've cited illustrates that specifically. The third problem, of course, with that analysis is that the cases that AXIS relies on to arrive at this argument are cases that involve exclusions from coverage, not cases that involve indemnity or coverage provisions. And that distinction is profound and it's meaningful as the UnitedHealth case illustrates. How do you distinguish your circumstance from the, there are a series of cases that were cited by the parties, I'm sure your research has disclosed, where the court said if the underlying claim is not covered, we're not going to pay the fees, the fees also should not be covered. What do we do with that case? So that's the UnitedHealth Insurance case that I talked about from Minnesota. I'm talking about the case that's on the opposite of UnitedHealth. If you look at the cases, Big Five, City of Sandusky, the cases that are cited, what you'll see is all those policies do not cover attorney's fees, and there's express exclusions in the policies that provide that the risk and loss that's engaged there is not covered. Our policy expressly covers attorney's fees, that's the first leg of distinction. And second, there is no exclusionary language here in this policy that would allow you to uncover, if you will, the attorney's fees that the coverage provides for. So what we're up to on this provision, Your Honor, is a liberal construction of a coverage provision in favor of coverage, not an exclusion that shows there was no coverage in the first instance and therefore you shouldn't have coverage at all. Now back to our construction of the policy issue for a minute. It aligns with, as I said, principles of construction, the language in the policy, it harmonizes the language, it's consistent with the structure of the policy, and more importantly, it retains the basic coverage of the policy. That is the result that Pennsylvania law favors and which this Court should prefer. And it is reasonable for the reasons that the briefing says. It might not be the only one, but it is a reasonable one. Thank you very much. We'll hear you in rebuttal. Mr. Kronick? Am I pronouncing that correctly? You are, indeed. I am Jason Kronick. I do represent Access Insurance Company, the appellee, and the cross-appellant. Now if I could, I'd like to start with Judge Schwartz's questions about the Common Fund because I don't think everything that I heard presented was quite right. I think I'll strike that in that counsel's correct. We're not relying on an exclusion in that regard. We're relying on the policy's coverage grant. The policy provides that coverage is where the insured is legally obligated to pay an amount. Now there was an award here, but it was not an award that was made against my client. It was the award that was made out of the Common Fund, as Judge Schwartz noted. That Common Fund, for the reasons that are discussed in the appeal in chief, was made up of uncovered funds that were fees that fell within the provision of the fee exclusion. So you have a pot of money, $90 million with respect to the MDL, that is not covered. And PNC pays that money and asks its insureds to pay the money at that point. And then months later, months even after this actual litigation was filed with respect to the MDL, the judge there awarded fees out of that uncovered fund. And I just don't understand the reasoning that converts an amount that was not covered at the time it was paid to an amount that somehow becomes covered. And I think, with all due respect, the district court failed to recognize the inherent contradiction in its original opinion. What is the practical consequence of the district court's decision in terms of the amount that Axis would ultimately have to pay? In other words, $30 million, $30 plus million in fees that were awarded by the district court said there's coverage for those $30 million. There's a $25 million self-retention. So is your liability $5 million? Or is it the $25 million? Well, as Your Honor knows, the primary policy is gone. And that's why HCC is not part of this appeal. The $25 million retention, if there's coverage, would apply. The fees, the $25 million, if they were covered, would erode that. So it would just be the excess in addition to the other amounts that are covered. I mean, this case focuses on damages, which is part of the definition of loss. There's a separate portion of the policy, claim expenses. So there are other amounts that have served to erode a portion of the underlying retention. I think something like $3 million to $2.8 million in defense fees that were incurred by PNC actually defending the MDL and the trial reaction. Would your analysis be any different if, when the pool of money was established from the get-go, a portion of it had been earmarked as attorney's fees? It might have been. Of course, that did not happen. I'm not sure. But would your analysis be any different? The analysis could be different depending on the reason why the fees in chief were not covered. If, for instance... Well, every class action, attorney's fees are part of the deal, right? Right. But the reasons for the cases that we pointed where associated damages are not covered, there are certainly a number of cases that suggest that the fees themselves cannot be covered as well. The point I was trying to make before, Your Honor, is that, for instance, if this particular payment, if the damages that were paid in connection with this case were found to be contrary to public policy, for instance, putting the fee award aside, in that situation you certainly could see an argument that the legal fees should not be paid because the incentive that's created would be associated damages. Those are the cases that we've seen in a number of different situations. If the base amount is not paid, then nothing should be paid. BOC, Sidio Sandusky. I think counsel's correct. There's different language with respect to all of these particular cases, but there is nonetheless an underlying theme that it is unseemly, if you will, that fees in that situation can be paid. And it's hard to come to terms with the Minnesota case. The court does the analysis there and sort of says, well, the policy says what the policy says. In the first instance, that's correct, but the policy doesn't say what PNC says here. It says there has to be a legal obligation to pay, and there was not one here. Also, I do think the Minnesota case, it talks about a lump sum that was being paid. I don't think it was appreciating the distinction that Judge Schwartz raised, that it was a common fund, and the common fund, as the case teaches, that's a loss that's put onto the plaintiffs because of the benefits that they derived. With respect to the specific question, had they cut it out that way, they did not do it. Had they done that, the $90 million pot was still not covered for the reasons that we were talking about. Would the attorney's fees have been covered? The attorney's fees, putting public policy aside, the attorney's fees, if they had been set forward that way, might have been covered. I don't know that there was an exclusion otherwise in the policy that would have applied to those fees. Assuming, of course, that the district court ultimately made that award as against PNC and rejected the common fund. I think the common fund is a distinction that occurs there. If the district court had not proceeded under a common fund analysis, had it been a different sort of analysis, a percentage of the award or a load star, that makes a more complicated issue. There is a damage clause in your contract and it talks about attorney's fees being recoverable. If we were to adopt your view that because it's a common fund, that clause doesn't apply. Or if we were to adopt your view that it shouldn't apply because the underlying claim was uncovered, what policy language, I'm talking about the insurance policy, not public policy, the insurance policy language gets us to your end? Your Honor, that's easy. That's point one. It's the coverage grant. There was no legal obligation to pay there as against PNC. So I think that's the basis for not awarding fees in that point, unless you were to take some of the more esoteric approaches that are present in the cases that are dealing with public policy and the other cases of that nature. So when you say no legal obligation to pay against PNC? Against PNC. There was an award, but it was not against PNC. And as far as that goes, I think... Because the award was in favor of the plaintiff class. The award was in favor of the plaintiffs and the money was out the door. The horse had already bolted at that point. PNC had paid the money. Same situation in Trombley as well. And I think it's worth noting that both courts were crystal clear, as were the parties, that these were common fund settlements. They knew the hand that they were dealt and they're trying to change it after the fact. And how do you deal throughout a series of arguments that he made on his initial arguments to us about this supposed factual dispute about the purpose of the fund? Well, I think there are a couple of instances here where PNC asks for something, gets it, and then says, well, that's not what I wanted. I want to try again. You know, in connection with resolving this case in the district court, myself and Ms. Horgan, we talked. We said we think these are legal issues. I think this can be decided as for cross motions on the pleading with a stipulated record. And PNC said, and they asked the court to resolve as a matter of law, whether the settlement payments were damages. They teed up the issue. We all agreed on what the relevant documents were. And I submit that the district court's review of the undisputed record leads to the obvious conclusion that these were fees. That's what was asked for in the complaint. That's how the class was defined. That's how the settlement operated. And that's how PNC, when it was explaining the settlement to class members, told them it was going to operate. If you, for whatever reason, had received a refund, you're not even in the class. So it was all about refunds, and it always was. And so the court's application of the fee exception here, this was right down the middle of the strike zone, as it were. And in that regard, I'd like to point out that that interpretation is unsurprising. We're talking about a policy issue to a sophisticated financial institution. And we've seen in the various case laws that's been cited, the Fidelity case, the bank shares case that my opponents cite, the Ticketmaster case that's cited in the record below, there are often provisions about disputes over fees in policies such as this. So the common understanding would be that the fee exception was intended to apply to a situation where you have a dispute about fees. And let me just focus there. It's a dispute about fees. It is not a dispute about good or bad fees, or fees that should have been paid or should not have been paid. By putting this in the coverage grant and setting it forth as a statement that fees show for professional services don't fall within the definition of damages, the insurers here essentially opted out of an argument about whether or not the fees were rightfully or wrongfully gained in the first instance. How do you respond to the magistrate judge's observation that the interpreting fees as been done here by the district court would mean that they would have no coverage? Because most of their services are granted to their customers in exchange for a payment of some sort of fee. Well, Your Honor, this is what I do. I represent carriers in connection with these sorts of claims, and that just simply isn't the case. HCC's gone here. It doesn't have anything to do with fees. We've all unfortunately had to suffer through the subprime meltdown. Sophisticated banks often may charge fees in connection with their services. That has nothing to do necessarily with what the damage is that are going to be sought by various claimants against the bank. You didn't do a proper job in analyzing what the value was of this settlement, of this financial instrument, and therefore we incurred huge losses. We thought we were investing in a solvent investment fund. You guys failed to record that properly, and it's actually a deeply insolvent fund. It applies in a lot of different situations. Also, I note that the magistrate judge there got a little fixated on the fee concept when trying to interpret that provision. It's not just fees. It's commissions or charges. When you think about commissions there, suddenly there's a whole lot of difficulty with respect to the alternative interpretation that PNC wants to offer in an effort to create ambiguity here within the confines of the fee exception itself. Commissions are dealt with in the prior section of the carveback that's contained within the fee exception, so no commissions are covered. Then suddenly no commissions are covered again when they're paid to the insured. That just doesn't make sense. Perhaps that's unsurprising because we had a complaint. The carriers were sued here. You owed us money. You have to pay us. We see the motion for judgment on the pleadings, and this interpretation that PNC offers is nowhere present. Lots of good, smart coverage attorneys at Reed Smith looked at the language and said, well, the problem here is that the personal profit exclusion creates a conflict, and therefore there shouldn't be coverage. All that reading in the first instance never created this paid or payable to the insured really means damages approach. I submit that's just not a natural reading in a policy like this. Rather, PNC was forced to cobble together that approach based on some of the things that the magistrate judge did, sort of picking and choosing, but you can't square that with the actual language. Again, for instance, it says paid or payable to an insured. Well, here the insured are the class members, as PNC would have it. They're the claimants, and as the district court noted, well, a claimant is not acting in its capacity as an employee of PNC, and therefore it's not an insured, so that interpretation doesn't work. Likewise, and again, this gets a little bit esoteric, but it says paid or payable to an insured, and that formulation, paid or payable, doesn't make any sense in connection with the PNC's approach to the language. Why isn't it just paid to an insured? This paid or payable language is not used anywhere else, but if you look at the way that Axis would interpret the exclusion, paid or payable, well, consider the case where you have no money in your account, you swipe the card, you get the overdraft charge, and now PNC is telling you you owe $36. Well, that's a payable amount, and say there's a resolution and PNC forgives that debt. It still might turn around to its insurers and say, well, I forgave a $36 debt, and say, well, you didn't pay it, and they'll say, well, it was payable. We say paid or payable, it falls under the language of the fee exception as we interpret it. So this created ambiguity just doesn't make any sense. It can't stand up under the normal rules of construction as the district court properly noted. If we could go back to the attorney's fees component of this, and the language in the insurance policy has no limitation that requires the underlying claim to have been covered by the policy. If we were to adopt your view, aren't we reading out the ability to get coverage under the damages clause? That's what happened in the UnitedHealth case, right? The district court said you can still get coverage even if the underlying claim isn't covered because the plain language of the policy allows it. Isn't that the case here? I don't think it is, Your Honor, in that you still have to get through the notion that there was a legal obligation to pay the damages in the first instance. Whether or not they satisfy the definition of damages is a different question there, but that is the first hurdle that P&C trips over. The second one, of course, is the fact that that money was uninsured in the first instance. I think that's it. So unless the court has any other questions, I will turn things over. Thank you very much. Thank you, Your Honor. So let me start with that last proposition. Both district judges, the magistrate judge and the district court, agreed that P&C had made out a prima facie case for coverage here. So the issue on this appeal is confined to whether there's an exception from coverage that ought to apply to that. On that issue, of course, what's happening with AXIS's construction of this fee exception is it's moving off of what is grammatically there, it's ignoring the redundancies that its construction creates, and it's adding language to that exception that's not in there. Now, if AXIS had wanted everything out of that exception that it's talking about here, it should have written the exception like the ones that are present in the Ace Capital case, or the Ticketmaster case, or the first community bank shares case, which had very specific language which would have excluded the fees. This does not. And after that, there's no compulsion to broaden that exception in AXIS's favor. This isn't a case about sophisticated insurance. This is a case about an ambiguous policy provision. And where that happens, and it's a result of bad drafting, the Third Circuit opinions in Meyer Medical Protective are clear. That construction, it's ambiguous, and it's in favor of the insured. This Court should not be looking for ways to deny coverage here. It should be looking for ways to find it. Second, as to the settlements themselves, I want to reinforce. This was not a dispute when it was settled about fees. The class claims were broader. The theories of recovery were broader. The negotiations and agreements reflect the risks of a broad PCA. So you want to remand it. What would happen on a remand? You submitted it on a stipulated record. So if I'm the district judge, I'm looking at it, and I'm saying, I'm going to make a decision in this case, and that's the end of the case. But now you're saying, but the stipulated record didn't allow the judge to do that. The stipulated record is missing the evidence that we now need because of the way the judge decided the case on a motion for judgment on the pleadings, where the presumptions from that record should have been in favor of us. What evidence? What evidence? Specifically? Evidence from the people who negotiated the settlement. Let's start there. Because the agreement itself, Your Honor. So they would testify as to what they intended? Exactly, and when you look at that, that testimony is critical because the settlement agreements don't say they are the return of fees or they're the discouragement of fees. I have a little trouble understanding how you could have presented it to the district court when we're dealing with an exclusion that deals with fees, commissions, or charges for professional services paid or payable to an insured, and now you're saying, but these weren't, the settlement wasn't fees or charges. If I can just answer that in one minute or one thirty seconds. Sure. The issue that we submitted to the district court as a matter of law on the record was whether the settlement represented damages paid or payable to the insured. And as a matter of fact, they do not. That was the only issue that comes out of the record. Officers and... I'm sorry to interrupt you, but you knew that from AXIS's point of view, it would be arguing that these fall within exclusion, within this exclusion. And if it comes down to that argument and the way that they construe it, now the presumption should be in our favor, and the one thing that's clear is judgment on the pleadings then should not be granted. If you move beyond our argument that coverage is present here as a matter of law and you reject coverage the way that the district court did, now you have rejected the presumptions for motions for judgment on the pleadings that should have gone in our favor. And the entire record should have been considered, there should have been the evidence that I talked about, and it should have been further analyzed whether that record compelled the conclusion that those settlements were the disgorgement of fees instead of lump sum payments for the risk of a very complex piece of litigation. Thank you very much.